# CHARLESTON.

E. C. MUSICK *et al. v.* R. M. MUSICK *et al.*

(No. 5805)

Submitted May 10, 1927.      Decided May 31, 1927.

1. INFANTS—*Decree Selling Delinquent and Forfeited Lands, Unappealed From and Unreversed, is Conclusive on Claimants, Impleaded or Appearing, Though Infants (Code, c. 105, §§ 6, 7).*

The decree of a circuit court in a suit by the State to sell delinquent and forfeited lands, adjudicating the rights and titles of conflicting claimants and permitting the one adjudicated to have the better title to redeem the land, unappealed from and unreversed, is final and conclusive of the rights of all claimants impleaded or appearing in the cause, though some of such claimants be infants.

(Taxation, 37 Cyc. p. 1553 [Anno].)

2. TAXATION—*Infants' Rights Against Whom Decree to Sell Forfeited and Delinquent Lands is Rendered, Are Barred,*

*Unless Bill of Review is Filed Within Statutory Time (Code, c. 133, § 5).*

There is no saving in the statute of limitations in favor of infants against whom a decree is pronounced in such a suit by the State, unless upon bill of review after removal of the disability, filed within the time prescribed by statute in such cases.

(Taxation, 37 Cyc. p. 1553 [Anno].)

(Note: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Mingo County.

Suit by E. C. Musick and others against R. M. Musick and others. From a decree of dismissal, plaintiffs appeal.

*Affirmed.*

*E. A. Hansbarger* and *G. W. Crawford,* for appellants.
*Randolph Bias* and *Ira J. Partlow,* for appellees.

Miller, Judge:

The immediate purpose of the present bills, the original and amended bill, was to have set aside, cancelled and annulled a certain decree pronounced on October 23, 1915, in the suit of State, by the School Commissioner, vs. E. E. Musick and others, and to have it decreed that the defendant George R. Buskirk, the purchaser at a judicial sale of the tract of 135 acres of land in Mingo County, for the reasons alleged, was holding the same in trust for the plaintiffs, and requiring him to convey the property to them in execution of the alleged trust.

On demurrer by Buskirk to each of said bills, sustained, the plaintiffs declining to further amend, both were dismissed, and plaintiffs have appealed.

The basis of plaintiff's claim of title is as follows: On September 18, 1896, Floyd Musick, their father, they being his only sons, made deed for said tract to Belle Musick, his wife and their mother, a copy of which they exhibited with the bills, whereby in consideration of one dollar, acknowledged, he granted said tract to her, describing it by metes and bounds, and containing the following provisions, on which plaintiffs especially rely:

"This deed is made in the following conditions
That the party of the second part is to retain said
land during her life time or as long as she is the
wife of the party of the first part, and both is de-
ceased then the said land *goe* to sons of the party of
the first part. And the said party of the first part
do hereby covenant with the party of the second
part that they will warrant generally the property
hereby conveyed and witness the following signa-
ture and seal.

                    FLOYD MUSICK.   (Seal).''

The allegations of the bills with respect to this provision
of the deed are that by the making and delivery thereof they
became invested with an estate in remainder in said tract, sub-
ject to the contingencies and limitations therein provided, and
regardless of the subsequent dealings and transactions be-
tween the parties respecting the land, presently to be related,
they still remain vested with the remainder in fee therein,
granted to them by the deed of September 18, 1896, or at least
with the equitable title thereto, the legal title to which is in
defendant Buskirk, and which they seek to extract from him.

The allegations of the bill are that in fraud of their rights
granted by said deed, and pursuant to a scheme to deprive
plaintiffs of their alleged title in remainder, the said Floyd
Musick and Belle Musick, on January 20, 1898, joined in a
deed to one E. E. Musick, whereby for the alleged considera-
tion of $1,000.00, part in cash and the residue by note, they
undertook to grant said tract of land to the said grantee, his
heirs and assigns forever, with covenants of general warranty,
and without reservation of any kind. The bill further alleges,
with respect to this deed of January 20, 1898, that regardless
of its provisions, its effect, in view of the provisions in their
favor in the deed of September 18, 1896, was to convey to the
said E. E. Musick, only the equitable life estate of the said
Belle Musick, and to leave the legal title thereto remaining in
the said Floyd Musick, subject to the rights of complainants
as remaindermen therein.

In view of this status of the title and of the rights and in-
terest of the parties in relation thereto, the bills further allege
that soon after acquiring the deed as aforesaid, of January

20, 1898, the said E. E. Musick afterwards contrived a scheme to deprive plaintiffs of their title and interest in said land by permitting the same to be returned delinquent for the taxes for the year 1908, after it had been charged upon the land books in his name for that year and for many years prior thereto; that in further advancement of said purpose, after he had permitted said tract to be returned delinquent, sold, and purchased by the State for the delinquent taxes, and become irredeemable, the said E. E. Musick procured the commissioner of school lands, in 1915, to proceed against it as forfeited and delinquent land and to sell it for the benefit of the school fund, but wherein the said Musick was permitted to intervene and redeem said land, claiming superior rights thereto.

The bills seem to concede that plaintiffs were made parties to the bill of the State, but they allege that they were infants under the age of twenty-one years, and that two of them, Doris and E. C. Musick, were under fourteen years of age, and that the guardian ad litem appointed for plaintiffs did nothing to represent or protect their interests, nor filed any pleadings for them, except a mere formal answer for three of complainants, namely, Paris, Doris and A. L. Musick, and thereafter took no further proceedings usual and customary in such cases to protect infants' rights. They also allege that they had no knowledge that any one proposed to attack their rights and title in remainder in said suit, or that anything had been done therein to that end until shortly before the institution of this suit, that nothing in the bill of the commissioner of school lands so attacked their interest; and they allege that if anything of that kind had been sought, it would have been improper and would have had no place in that suit; that neither of the petitions or answers of said E. E. Musick contained any allegation or prayers, nor was there any pleading or process issued thereon warranting any such relief against plaintiffs. Nevertheless, the bill further alleges, the court by the decree of October 15, 1915, therein complained of, undertook to adjudge and decree that the deed of September 18, 1896, in so far as it purported to invest any title, right or interest in the land therein redeemed

in plaintiffs, contrary to the facts and the law applicable thereto, was void and of no effect for uncertainty of description.

The bill does not clearly show in what way or manner the defendant Buskirk became possessed of title to the tract in question, so as to be holding it in trust for plaintiffs. The only allegation covering that subject is that by decree of the circuit court of Mingo County, entered October 24, 1923, in the consolidated causes of Alfred Ellis vs. Sarah P. Musick and others, and Ruby Buskirk vs. Sarah P. Musick and others, said land was decreed to be sold, was sold thereunder, and purchased · by said Buskirk, about January 19, 1924, confirmed to him by the court, and by deeds subsequently made and delivered title was transferred to him; but just how the title claimed by plaintiffs through E. E. Musick and others was involved in those causes is not alleged.

For the purpose of showing the present right and title of plaintiffs in the said land, it is further alleged that some time prior to the institution of this suit, their father Floyd Musick died intestate, leaving them as his only heirs at law; that E. E. Musick the immediate grantee of their father and mother died some time during the year 1918, shortly after said Floyd Musick and Belle Musick were divorced from the bonds of · matrimony and that relationship between them thereby severed, and whereby the estate of the said Belle Musick and her assigns ceased, pursuant to the covenants and agreements contained in the deed of September 18, 1896, namely, that the party of the second part, Belle Musick, should "retain said land during her life time or as long as she is the wife of the party of the first part, and both is deceased then the said land *goe* to sons of the party of the first part."

The purpose of the bills, as stated, being to hold Buskirk as trustee, it should have been more clearly shown by allegations how the trusteeship arose out of the facts. It seems to be assumed that Buskirk in some way holds under E. E. Musick, and that E. E. Musick derived his title through Floyd Musick and Belle Musick, subject to the rights of plaintiffs. But by the deed of Floyd and Belle Musick to E. E. Musick,

the grantors undertook to convey the land to the grantee in fee simple, wholly disregarding the deed of September 18, 1896, to which plaintiffs refer for their right and title. So that here and in the State's suit to sell the land as delinquent and forfeited, the claimants, though claiming under the same parties, but by separate deeds, were in hostile camps. Of course, if the deed of September, 1896, was a good and valid deed to invest plaintiffs with a remainder, E. E. Musick's title, being subsequent in time, would be subsequent in right, provided these conflicting claims had been kept alive and not lost by lapse of time or forfeiture. E. E. Musick, by the terms of his deed, accepted no relationship of trust towards plaintiffs, nor did he subsequently deal with the land as trustee for plaintiffs. Nor did the parties concerned in the two consolidated suits, in which Buskirk became the purchaser in 1924, deal with the land as trust property, or as subject in any way to the present claim of plaintiffs. The deeds of the several parties started hostile titles.

Extended arguments are presented by the briefs of counsel on the nature of the title, if any, of the plaintiffs created by the deed of September 18, 1896, and the effect thereunder of the subsequent divorce of their grantors and also of their death, and the supposed liability of the said E. E. Musick and George R. Buskirk as alleged life tenants of the land after the death of Belle Musick and Floyd Musick; but in the opinion we have reached on the merits of the case, it becomes unnecessary for us to express any opinion on the questions thus sought to be presented, for we have reached the conclusion that the decree in the State's suit to sell the land in 1915 was a final adjudication of the rights of plaintiffs. That decree was pronounced on the 23rd day of October, 1915. The plaintiffs, though infants, were parties to the bill, as it was proper they should have been. They appeared by guardian ad litem at least, and are bound by any proper adjudication in that suit, of which the court had jurisdiction. The position of their counsel on this hearing is that the court was without jurisdiction to pronounce that decree against them, in that case. Their contention is that there are but two classes of cases where such jurisdiction exists: (1) where

there are two or more conflicting claimants, each asserting the right to redeem the land, in which case it is necessary that the court ascertain who is the true owner in order that he and not a false claimant be permitted to redeem. They say that in this case there was no question of the forfeiture, this being a conceded fact by all concerned, and that as E. E. Musick was life tenant only, and plaintiffs remaindermen, there was no denial that it was the right and duty of the life tenant to redeem, wherefore the assumed conditions necessary to give the court jurisdiction to try and settle the question as to plaintiffs' title as against E. E. Musick in the State's suit, did not exist. Assuming that any such classification of cases exists, we are unable to distinguish them from the case the court was then dealing with. Besides, E. E. Musick, who was allowed to redeem, was not claiming as life tenant. Under his absolute deed he was asserting the whole title and the right to redeem against every other claimant of the whole or any part of the estate. If his interest had been decreed to be anything less than the whole, he might have declined to redeem at all, as he could have done without any liability to plaintiffs as life tenants. This was the question he evidently wanted settled in that suit. His claim was hostile to that of plaintiffs, and made a controversy respecting title clearly within the jurisdiction of the court to settle and determine in such cases without cross pleadings or pleadings of any kind except the bill of the State. *State* v. *Hicks,* 75 W. Va. 767. Such is the construction put by the court upon secs. 6, 7, chap. 105 of the Code, and other provisions of that chapter. The question was therefore *res adjudicata.*

The decree determined from the showings made in the cause who of the claimants was entitled to redeem. Plaintiffs, though infants, were properly before the court, and are bound by the decree. *State* v. *Hicks, supra.* That decree was pronounced in 1915. This suit was not commenced by plaintiffs until 1925, at least ten years after the decree was pronounced. There is no saving of time in favor of infants in such cases. The decree that E. E. Musick had title and right superior to all others, and that he had the right to redeem, and adjudging that plaintiffs had no title, is final, and the rights of the plaintiffs to impeach that decree is barred

by the statute of limitations and laches. *McGraw* v. *Rohr-bough,* 74 W. Va. 285. The case just cited involved a sale by the commissioner of school lands, and a purchase, not a redemption, as here, but we see no room for distinction on that account, so far as the statute of limitations is concerned. One is a parting by the State of its title to a purchaser, the other a redemption of the title by a former owner, but both amount to adjudications, and unless conclusive such decrees would be abortive. It would be too late now for plaintiffs, or any of them, if it could be done in a case like this, to file a bill of review to correct the decree for error. Sec. 5, Chap. 133, Code.

The fraud imputed to E. E. Musick, and inherited by Buskirk, is relied on, but we fail to appreciate the proposition as being appealable in a case like this. No facts constituting fraud are alleged. Suffering land to go delinquent, and redeeming it in a school commissioner's suit, does not amount to fraud, especially on plaintiffs' theory that the delinquency suffered and the redemption were designed to thereby acquire the title against the plaintiffs as remaindermen. Such a proceeding would leave the life tenant holding the land subject to the same burden. As we have pointed out E. E. Musick was not holding the land as tenant for life, but in antagonism to the deed under which plaintiffs claim, as he had the right to do, and afterwards took advantage of the State's bounty to get it back.

Being unable to discover reversible error, we affirm the decree.

*Affirmed.*